IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.

WILLIAM H. BLACK,
JAMES A. FRANKLIN, JR.,
ALFRED TWITTY,
LINDA WILSON, and
LISA ADAMS

Unsealed 2/28/00
~~SEALED~~
INDICTMENT

1:00 CR 15 SPM

/

**THE GRAND JURY CHARGES:**

That at all relevant times unless otherwise indicated:

**INTRODUCTION**

1. WILLIAM H. BLACK was the Chairman and Chief Executive Officer of Professional Management, Inc., ("PMI") located at 914 Richland Street, Suite A-200, Columbia, South Carolina, and was licensed by the National Football League Players Association ("NFLPA") as a Contract Advisor, commonly known as a "sports agent," to represent professional football players in contract negotiations with member clubs of the National Football League ("NFL").

2. JAMES A. FRANKLIN, JR. was the General Counsel for Professional Management, Inc., and was also the Chief Operating Officer of Professional Management Consulting, Inc., located at 914 Richland Street, Suite A-200, Columbia, South Carolina.

3. ALFRED TWITTY was listed in PMI's brochure as a "Vice President of Player Development and Field Operations" of Professional Management, Inc. In truth and in fact, TWITTY was a "recruiter" for WILLIAM H. BLACK and solicited college football players by paying them cash and purchasing items for them to induce them to sign representation contracts with PMI when they declared their eligibility for the National Football League player draft. A representation contract would allow WILLIAM H. BLACK to negotiate salary contracts on behalf of players represented by PMI, and in return PMI/BLACK would receive 3% of the negotiated contract money as a fee.

4. LINDA WILSON operated World Express Travel, Inc., a travel agency in Columbia, South Carolina. WILLIAM H. BLACK was the chairman and CEO of World Express Travel, Inc.

5. LISA ADAMS was the Director of Banking and Finance for Professional Management, Inc., and was responsible for bank-to-bank wire transfers for WILLIAM H. BLACK's personal bank accounts, various domestic and offshore entities, and player/client accounts.

6. Professional Management, Inc., was a business which represented professional sports athletes, primarily football players, and purported to conduct contract negotiations, marketing, financial tracking, and personal management for its player/clients.

7. Professional Management, Inc., also maintained checking accounts for their player/clients into which the player's salary and bonus money were deposited, with signatory authority on that account by one or more PMI employees. All such accounts were maintained at the business premises of PMI, 914 Richland Street, Suite A-200, Columbia, South Carolina.

8. P.E. Communications was a Columbia, South Carolina "shell" company used by WILLIAM H. BLACK to conceal player/client funds WILLIAM H. BLACK purportedly invested in Black Americans of Achievement.

9. The National Football League ("NFL") is a group of member clubs which hire professional football players and pay them salaries and bonus monies to play for and compete against member clubs in the sport of football.

10. The National Football League Players Association ("NFLPA") is the collective bargaining representative for athletes who enter into contracts with member clubs of the National Football League, and regulates the conduct of Contract Advisors.

11. Silverline Development Corporation, LCC ("SILVERLINE"), was a South Carolina corporation owned and operated by WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., and LINDA WILSON, purportedly created to construct a business complex in Columbia. SILVERLINE received funds from offshore entities and disbursed large sums to BLACK, FRANKLIN and WILSON.

12. Ashford Development Associates Ltd., Adams Development Associates, Ltd., Walker Venture Associates, Ltd., Taylor Development, Ltd., Marples Development Associates Ltd., ITL Corporation, Lowell Development, Ltd., and other entities had bank accounts at the Bank of Bermuda, Grand Cayman, Cayman Islands, and were used by WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., and LINDA WILSON to unlawfully launder money taken from the player/clients and to conceal the movement of that money from the players/clients.

13. Reidel Anthony and Isaac Hilliard played football at the University of Florida, Gainesville, Florida, and ended their collegiate eligibility after the 1996 football season. In or

about January, 1997, they signed representation contracts with PMI.

14. Fred Taylor and Jacquez Green were college football players at the University of Florida, Gainesville, Florida, and ended their collegiate eligibility after the 1997 football season. In or about January, 1998, they signed representation contracts with PMI.

15. Jevon Kearse, Reggie McGrew, and Johnny Rutledge played football at the University of Florida, Gainesville, Florida, and ended their collegiate eligibility after the 1998 football season. In or about January, 1999, they signed representation contracts with PMI.

16. The United States Securities and Exchange Commission was an agency of the United States.

### COUNT ONE
### CONSPIRACY

17. Beginning in or about June, 1996 and continuing through the date of this indictment, in the Northern District of Florida and elsewhere, the defendants

WILLIAM H. BLACK,
JAMES A. FRANKLIN, JR.,
ALFRED TWITTY,
LINDA WILSON, and
LISA ADAMS,

did knowingly and willfully combine, conspire, confederate, agree and have a tactic understanding together and with other persons to commit certain offenses against the United States, to wit:

(a) to knowingly and willfully devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme, to cause to be placed into authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service and by

4

commercial interstate carriers, in violation of Title 18, United States Code, Sections 1341 and 2;

      (b)      to knowingly and willfully devise a scheme and artifice to defraud and to obtain money by means of false pretenses, representations, and promises, and for the purpose of executing this scheme, to transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication certain writings, signs, signals and sounds, in violation of Title 18, United States Code, Sections 1343 and 2;

      (c)      to knowingly and corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due administration of the law under which a pending proceeding, <u>In The Matter of Certain Investment Advisors (HO-3375</u>, was being had before the United States Securities and Exchange Commission, by producing false and fictitious documents and making false, misleading, and deceitful representations and statements, in violation of Title 18, United States Code, Sections 1505 and 2;

      (d)      to knowingly and willfully defraud the United States of and concerning its right to have its business and affairs, and particularly the transaction of the official business of the Federal Bureau of Investigation and a federal grand jury in the Northern District of Florida, conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction, in violation of Title 18, United States Code, Sections 371 and 2.

## THE FRAUDULENT SCHEME

18.    From in or about June, 1996, and continuing through the date of this indictment, defendants WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., ALFRED TWITTY, LINDA WILSON, LISA ADAMS, and others known and unknown to the Grand Jury, engaged in a

scheme to defraud PMI player/clients who invested in entities and/or programs promoted by WILLIAM H. BLACK as high-profit investment opportunities.

19. In furtherance of the scheme to defraud, defendants BLACK, TWITTY, and others paid cash to college football players to recruit and induce them to sign representation contracts with PMI to gain control of the players' projected earnings as professional football players. Under the PMI representation contract, BLACK as a National Football League Contract Advisor negotiated the players' contracts with professional football teams, and then had the players deposit their bonus and salary monies into PMI-controlled bank accounts.

20. With the vast earnings of these professional football player/clients at their disposal, BLACK and FRANKLIN made false representations and promises to gain the confidence of the player/clients to induce them to use or allow to be used large amounts of their bonus and salary funds to ostensibly purchase shares of stock and invest in securities. These false representations and promises included declarations that the transferred money was safe and would provide high yield returns. Instead, BLACK and FRANKLIN took and converted the player/clients' monies and used it to pay personal expenses and business expenses to promote the fraudulent scheme.

21. In furtherance of the scheme to defraud, BLACK, FRANKLIN, and others omitted to tell the player/clients that 1) BLACK had a proprietary interest in one company in which he said he invested their money; 2) BLACK, FRANKLIN, and others had created "front" companies and offshore bank accounts to conceal the movement of the player/clients' money; 3) BLACK, FRANKLIN, and others were using certain player/client funds to repay the principal to other player/clients who had made previous investments; and 4) BLACK, FRANKLIN, TWITTY, and WILSON were using the player/client funds for personal expenses and business expenses to

promote the fraudulent scheme.

22. WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., LINDA WILSON, and LISA ADAMS would conceal the player/client funds by transferring them through diverse domestic and foreign entities and banks, and then would use those funds for personal and business expenses to promote the fraudulent scheme.

**MANNER AND MEANS OF THE CONSPIRACY**

It was part of the conspiracy that:

23. WILLIAM H. BLACK and ALFRED TWITTY would solicit college football players to sign representation contracts with PMI so that WILLIAM H. BLACK would have the exclusive rights to negotiate the players' salaries and bonus monies with professional football teams of the National Football League.

24. WILLIAM H. BLACK would use ALFRED TWITTY and others to pay cash to and expenses for college football players at various universities before their collegiate eligibility terminated to ensure that the players would sign exclusive representation contracts with PMI.

25. WILLIAM H. BLACK and ALFRED TWITTY would go to the University of Florida, Gainesville, Florida to solicit University of Florida football players to sign representation contracts with PMI for contract negotiations with professional football teams.

26. With the exclusive rights to represent players in contract negotiations with professional football teams of the National Football League, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., would gain control of the negotiated salary and bonus monies paid to the players by National Football League teams by having those funds deposited into PMI accounts controlled by WILLIAM H. BLACK and other persons directed by BLACK.

27. WILLIAM H. BLACK would then solicit PMI-represented players, including University of Florida players Isaac Hilliard, Reidel Anthony, Jacquez Green, and Fred Taylor, to place portions of their contract money into fraudulent investments, including Black Americans of Achievement, Inc., ("BAOA") and Cash 4 Titles, by falsely representing and deliberately withholding information about the value and risk of the investments and the amount and location of money invested by the player.

28. WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., would create false and fictitious documents which purported to show that the players knew of and consented to the investments promoted by WILLIAM H. BLACK.

29. In truth and in fact, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., would take, steal, and convert the players' alleged investment funds, without the players' knowledge and/or permission, for the use and benefit of WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., and others.

30. For the purpose of executing the fraudulent schemes to steal and misappropriate the players' monies, WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., LINDA WILSON, and LISA ADAMS did cause matter to be delivered by United States Postal Service and commercial carriers, and did cause the transmission of wire communications, including telephone and facsimile communications, and bank wire transfers, in interstate and foreign commerce.

31. LINDA WILSON would use money provided by WILLIAM H. BLACK and would send it by Western Union to ALFRED TWITTY and others to conceal the source of the funds and to promote the fraudulent scheme.

32. WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., and LINDA WILSON would also use front companies and domestic and foreign banking systems to launder the money stolen from the players in attempts to conceal the movement of the players' funds in the fraudulent schemes and to use the funds to promote the fraudulent schemes.

33. When the United States Securities and Exchange Commission, the National Football League Players Association, the Federal Bureau of Investigation, and the Internal Revenue Service-Criminal Investigation Division began to investigate the fraudulent schemes, WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., LISA ADAMS and others would provide deceptive and misleading information by giving false statements to federal investigators and false sworn testimony in official proceedings, create false and fictitious documents, and induce other persons to knowingly provide false information, all in an effort to conceal and cover up and perpetuate their fraudulent schemes.

## OVERT ACTS

34. In furtherance of the conspiracy and in order to accomplish its objects, defendants WILLIAM H. BLACK, JAMES A. FRANKLIN, JR., ALFRED TWITTY, LINDA WILSON, LISA ADAMS, and other co-conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Florida and elsewhere.

      a.     In or about October, November, and December, 1996, ALFRED TWITTY paid cash to and expenses for Isaac Hilliard in Gainesville, Florida.

      b.     In or about November, 1996, ALFRED TWITTY met with Isaac Hilliard at the Holiday Inn at I-75 and Newberry Road, Gainesville, Florida.

c. On or about December 13, 1996, WILLIAM H. BLACK caused $50,000 of Natrone Means' salary and bonus money to be transferred into the bank account of P.E. Communications in Columbia, South Carolina.

d. In or about January, 1997, WILLIAM H. BLACK met Isaac Hilliard and Reidel Anthony in Gainesville, Florida, to discuss their representation by PMI and WILLIAM H. BLACK in contract negotiations with National Football League teams, and to discuss investments that BLACK could make on their behalf with their contract money.

e. In or about January, 1997, WILLIAM H. BLACK provided an airline ticket to Reidel Anthony to fly from Gainesville, Florida to Columbia, South Carolina, to sign a Contract Advisor agreement with PMI.

f. In or about February, 1997, WILLIAM H. BLACK provided an airline ticket to Isaac Hilliard to fly from Gainesville, Florida to Columbia, South Carolina, to sign a Contract Advisor agreement with PMI.

g. On or about February 13, 1997, WILLIAM H. BLACK wire transferred $5,000 from Columbia, South Carolina to Isaac Hilliard in Gainesville, Florida.

h. On or about April 27, 1997, WILLIAM H. BLACK wire transferred $3,000 from Columbia, South Carolina to Isaac Hilliard in Gainesville, Florida.

i. On or about May 19, 1997, WILLIAM H. BLACK wire transferred $1,500 from Columbia, South Carolina to Isaac Hilliard in Gainesville, Florida.

j. On or about June 19, 1997, WILLIAM H. BLACK caused $50,000 of Duce Staley's salary and bonus money from the Philadelphia Eagles professional football team to be deposited into the bank account of P.E. Communications in Columbia, South Carolina.

k. On or about June 19, 1997, WILLIAM H. BLACK signed a P.E. Communications check in the amount of $20,000 payable to WILLIAM H. BLACK and deposited it into a personal bank account of WILLIAM H. BLACK.

l. On or about July 28, 1997, WILLIAM H. BLACK caused $250,000 of Isaac Hilliard's salary and bonus money from the New York Giants professional football team to be deposited into the bank account of P.E. Communications in Columbia, South Carolina.

m. On or about July 29, 1997, WILLIAM H. BLACK signed a P.E. Communications check in the amount of $200,000 payable to WILLIAM H. BLACK and deposited it into a personal bank account of WILLIAM H. BLACK.

n. On or about October 7, 1997, WILLIAM H. BLACK wire transferred $1,600 from Columbia, South Carolina, to ALFRED TWITTY in Gainesville, Florida.

o. On or about November 6, 1997, WILLIAM H. BLACK caused $125,000 of Reidel Anthony's salary and bonus money from the Tampa Bay Buccaneers professional football team to be deposited into the bank account of P.E. Communications of Columbia, South Carolina.

p. On or about November 7, 1997, WILLIAM H. BLACK signed a P.E. Communications check in the amount of $120,000 payable to WILLIAM H. BLACK and deposited it into a personal bank account of WILLIAM H. BLACK.

q. In or about November, 1997, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., met with Jimmy B. Roof and Robert C. Ellenburg at the PMI office in Columbia, South Carolina.

r. In or about November and December, 1997, ALFRED TWITTY gave cash to and paid expenses for University of Florida football players Fred Taylor and Jacquez Green in Gainesville, Florida.

s. On or about December 4, 1997, WILLIAM H. BLACK caused a check in the amount of $1,700,000 to be issued from the PMI account of Isaac Hilliard and gave that check to Jimmy B. Roof in Columbia, South Carolina.

t. On or about December 5, 1997, WILLIAM H. BLACK caused a check in the amount of $350,000 to be issued from the PMI account of Reidel Anthony and gave that check to Jimmy B. Roof in Columbia, South Carolina.

u. On or about January 4, 1998, WILLIAM H. BLACK provided airline tickets to Fred Taylor and Jacquez Green to fly from Gainesville, Florida to Columbia, South Carolina, to sign Contract Advisor agreements with PMI.

v. On or about January 5, 1998, WILLIAM H. BLACK caused a check in the amount of $150,000 to be issued from the PMI account of Isaac Hilliard and gave that check to Jimmy B. Roof in Columbia, South Carolina.

w. On or about January 8, 1998, WILLIAM H. BLACK caused a check in the amount of $200,000 to be issued from the PMI account of Reidel Anthony and gave that check to Jimmy B. Roof in Columbia, South Carolina.

x. On or about January 30, 1998, WILLIAM H. BLACK wire transferred $2,000 from Columbia, South Carolina, to ALFRED TWITTY in Gainesville, Florida.

y. On or about February 6, 1998, WILLIAM H. BLACK caused a check in the amount of $650,000 to be issued from the PMI account of Reidel Anthony and gave that

check to Jimmy B. Roof in Columbia, South Carolina.

  z. On or about March 17, 1998, WILLIAM H. BLACK wire transferred $9,000 from Columbia, South Carolina, to ALFRED TWITTY in Gainesville, Florida.

  aa. On or about March 30, 1998, WILLIAM H. BLACK caused a check in the amount of $100,000 to be issued from the PMI account of Reidel Anthony and gave that check to Jimmy B. Roof in Columbia, South Carolina.

  bb. On or about April 15, 1998, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Isaac Hilliard's PMI account and deposited into the bank account of PMC.

  cc. On or about April 15, 1998, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Reidel Anthony's PMI account and deposited into the bank account of PMC.

  dd. On or about April 15, 1998, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Robert Brooks' PMI account and deposited into the bank account of PMC.

  ee. On or about April 15, 1998, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Terry Allen's PMI account and deposited into the bank account of PMC.

  ff. On or about April 16, 1998, WILLIAM H. BLACK wire transferred $2,800 from Columbia, South Carolina to ALFRED TWITTY in Gainesville, Florida.

  gg. On or about April 30, 1998, WILLIAM H. BLACK caused $10,000 to be

wire transferred from Isaac Hilliard's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

  hh.  On or about June 9, 1998, WILLIAM H. BLACK wire transferred $1,650 from Columbia, South Carolina to ALFRED TWITTY in Gainesville, Florida.

  ii.  On or about June 16, 1998, WILLIAM H. BLACK wire transferred $2,800 from Columbia, South Carolina to ALFRED TWITTY in Gainesville, Florida.

  jj.  In or about June, 1998, WILLIAM H. BLACK received a check in the amount of $2.8 million dollars from Fred Taylor in Jacksonville, Florida.

  kk.  On or about July 10, 1998, JAMES A. FRANKLIN, JR., prepared a letter addressed to Patrick Tibbetts, President, Everest Management, Ltd., Grand Cayman, Cayman Islands.

  ll.  On or about July 21, 1998, JAMES A. FRANKLIN, JR., prepared a memorandum for WILLIAM H. BLACK in which FRANKLIN described "the creation of offshore entities for tax and legal liability purposes."

  mm.  On or about July 24, 1998, WILLIAM H. BLACK caused $2,400,000 to be wire transferred from Fred Taylor's PMI account to ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

  nn.  On or about August 7, 1998, WILLIAM H. BLACK wire transferred $2,500 from Columbia, South Carolina to ALFRED TWITTY in Gainesville, Florida.

  oo.  On or about September 2, 1998, WILLIAM H. BLACK caused $220,000 to be wire transferred from Jacquez Green's PMI account to ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

pp. On or about September 11, 1998, WILLIAM H. BLACK caused $240,000 to be wire transferred from Jacquez Green's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

qq. In or about September, 1998, WILLIAM H. BLACK caused Germane Crowell to apply for a $600,000 loan from SouthTrust Bank, Columbia, South Carolina.

rr. On or about October 13, 1998, WILLIAM H. BLACK caused $100,000 to be wire transferred from Terry Allen's PMI account to a bank in Southfield, Michigan.

ss. On or about October 15, 1998, WILLIAM H. BLACK caused a $200,000 cashier's check to be issued from Germane Crowell's PMI account to Jimmy B. Roof.

tt. On or about October 19, 1998, WILLIAM H. BLACK caused $300,000 to be wire transferred from Germane Crowell's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

uu. On or about December 29, 1998, WILLIAM H. BLACK caused $85,000 to be wire transferred from Isaac Hilliard's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

vv. In or about January, 1999, WILLIAM H. BLACK caused Reggie McGrew, Johnny Rutledge, and Jevon Kearse to travel from Gainesville, Florida to Columbia, South Carolina, to sign representation contracts with PMI.

ww. On or about February 19, 1999, WILLIAM H. BLACK caused $375,000 to be wire transferred from Isaac Hilliard's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

xx. On or about February 19, 1999, WILLIAM H. BLACK caused $650,000 to be wire transferred from Fred Taylor's PMI account to the account of ITL Corporation, Bank of Bermuda, Georgetown, Grand Cayman Island.

yy. On or about March 9, 1999, LISA ADAMS directed JAMES A. FRANKLIN, JR., to send wire transfer instructions to obtain funds from the account of ITL Corp., Bank of Bermuda, Georgetown, Grand Cayman Island.

zz. On or about April 12, 1999, WILLIAM H. BLACK told Reggie McGrew and Johnny Rutledge to lie to police investigators in Gainesville, Florida.

aaa. On or about April 19, 1999, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Issac Hilliard's PMI account and deposited into the bank account of PMC.

bbb. On or about April 19, 1999, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Reidel Anthony's PMI account and deposited into the bank account of PMC.

ccc. On or about April 19, 1999, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Robert Brooks' PMI account and deposited into the bank account of PMC

ddd On or about April 19, 1999, WILLIAM H. BLACK and JAMES A. FRANKLIN, JR., caused $30,000 to be taken from Terry Allen's PMI account and deposited into the bank account of PMC

eee. On or about May 25, 1999, WILLIAM H. BLACK gave false sworn testimony to attorneys of the United States Securities and Exchange Commission in Washington, D.C.

fff. On or about July 21, 1999, LINDA WILSON received $800,000 from Silverline Development Corporation.

ggg. On or about October 13, 1999, JAMES A. FRANKLIN, JR., gave false sworn testimony to attorneys of the United States Securities and Exchange Commission in Washington, D.C.

hhh. On or about October 13, 1999, LISA ADAMS, PMI Director of Banking and Finance, gave false sworn testimony to attorneys of the United States Securities and Exchange Commission in Washington, D.C.

iii. On or about November 10, 1999, LISA ADAMS gave false sworn testimony to attorneys of the United States Securities and Exchange Commission in Washington, D.C.

jjj. On or about November 30, 1999, Linda Danielle Granger made false and misleading declarations to a federal grand jury in Gainesville, Florida.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## MONEY LAUNDERING CONSPIRACY

35. The allegations of paragraphs 1 through 16 and 18 through 34 are repeated and realleged as though set forth in full.

36. Between in or about June, 1996, and in or about January, 2000, in the Northern District of Florida and elsewhere, the defendants,

WILLIAM H. BLACK,
JAMES A. FRANKLIN, JR.,
ALFRED TWITTY,
LINDA WILSON, and
LISA ADAMS,

did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding together and with other persons to conduct and to attempt to conduct financial transactions affecting interstate and foreign commerce, specifically, the transfer and movement of funds by checks and wire transfers between persons, financial institutions, and other entities, which involved the proceeds of specified unlawful activities, that is, mail and wire fraud in violation of Title 18, United States Code, Sections 1341, and 1343, with the intent to promote the carrying on of the specified unlawful activities and in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activities, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is, monetary instruments, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(h).

# COUNT THREE
# CRIMINAL FORFEITURE

37. The allegations contained in Count Two of the indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 18, United States Code, Section 982.

38. From their engagement in the violation alleged in Count Two of the indictment, punishable by imprisonment for more than one year, the defendants,

> WILLIAM H. BLACK,
> JAMES A. FRANKLIN, JR.,
> ALFRED TWITTY,
> LINDA WILSON, and
> LISA ADAMS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(I), all of their interest in:

    A. Property constituting and derived from any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and

    B. Property used and intended to be used in any manner or part to commit and to facilitate the commission of such violation.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    A. cannot be located upon the exercise of due diligence;

    B. has been transferred or sold to, or deposited with, a third party;

    C. has been placed beyond the jurisdiction of this Court;

    D. has been substantially diminished in value; or

E. has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)1) to seek forfeiture of any other property of the defendants, up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

_____
FOREPERSON

2-22-00
_____
DATE

_____
P. MICHAEL PATTERSON
United States Attorney

_____
R. JEROME SANFORD
Assistant United States Attorney

20